United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETBULA, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>DISTINCT CORPORATION.,<br><br>        Defendants.<br>_____/ | No. C 02-1253    JL<br><br>**ORDER GRANTING<br>LEAVE TO AMEND<br>document # 15** |

    Defendant's Motion for Leave to Amend its Counterclaim (Document # 15 in the court's docket) came on for hearing on January 8, 2003, Neil A. Smith, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, appeared for plaintiff Netbula, LLC ("Netbula").
Kimberly A. Eckhart, Morrison & Foerster, appeared for defendant Distinct Corporation ("Distinct"). The court considered the moving and opposing papers and the arguments of counsel and granted the motion from the bench. The court herein presents the reasoning behind its ruling.

    Distinct's counterclaims are not futile and Netbula will not be prejudiced by permitting Distinct to amend its counterclaims to add the following:

    1) that Netbula has posted false and misleading information on its website and

1 2) that Netbula has engaged in unfair competition by creating initial interest confusion
2 through excessive use of the Distinct trademark and trade name on the Netbula website.

## BACKGROUND

The parties, both California corporations, are competitors in creating and marketing RPC development tools. RPC stands for "Remote Procedure Call," a technology which helps the development of client/server applications. Netbula's product is called PowerRPC.

Netbula sued Distinct for trademark infringement, unfair competition and intentional interference with prospective economic advantage. Netbula alleges that Distinct has engaged in extensive infringement and unfair practices, including:

1) embedding the NETBULA and PowerRPC trademarks and trade name into Distinct's web pages hidden HTML keyword meta tags, and [1]

2) purchasing Netbula's trademark and trade name as key word advertisement from at least one Internet search engine (Google).

This court has original jurisdiction under federal copyright law and the Lanham Act. The parties consented to this court's jurisdiction as required by 28 U.S.C. section 636(c). At the initial Case Management Conference, this court recommended to the parties that they refrain from any but limited written discovery, to minimize legal fees, in the hope that ENE would result in a settlement. Netbula claims Distinct violated that understanding by filing its motion for leave to amend, and not granting Netbula an extension of time to respond, until after the Early Neutral Evaluation ("ENE") session. ENE did not settle the case:

Distinct seeks to add counterclaims: 1) that Netbula has posted false and misleading information on its website and 2) that Netbula has engaged in unfair competition by creating initial interest confusion through excessive use of the Distinct trademark and trade name on

---

[1] HyperText Markup Language ("HTML")

the Netbula website. Distinct's counterclaims seek to stop Netbula from posting on its web site false and misleading information about this lawsuit as well as configuring its website using the Distinct trademark and name in association with the acronym RPC, to lead to Netbula's website being displayed when a prospective customer is actually searching for Distinct and its products.

## NETBULA'S POSITION

Netbula sued Distinct after it claims to have caught Distinct "red-handed" using Netbula's trademark and trade name, "Netbula" as a search term, and in Distinct's hidden code and metatags. Netbula cites these as violations of the law, trademark infringement and unfair competition. Netbula says that the sole basis for Distinct's counterclaims is a press release by Netbula and story about this lawsuit, which of course results in some search engines' bringing up references to the story when web surfers seek information about Distinct.[2]

Netbula claims that its own action in posting the information about the lawsuit is entirely different from what Distinct allegedly did. Netbula claims that it did not use Distinct's trademark or trade name as hidden codes or metatags as Distinct did with Netbula's. Netbula merely relies on the search engines to "do their job" and refer to visible content about Distinct,

---

[2] The Ninth Circuit has found such use of metatags actionable as infringement:    Entertainment-industry information provider brought action against video rental store chain, asserting trademark infringement and unfair competition based on chain's use of provider's "MovieBuff" trademark in domain name of chain's web site and web site's metatags. The United States District Court for the Central District of California, Carlos R. Moreno, J., denied provider's motion for preliminary injunction, and provider appealed. The Court of Appeals, O'Scannlain, Circuit Judge, held that: (1) chain could not "tack" its use of term "moviebuff.com" onto its earlier use of trademark "The Movie Buff's Movie Store"; (2) provider was senior user of "MovieBuff" mark; (3) provider established likelihood of success on its claim that chain's use of "MovieBuff" in its domain name would create likelihood of confusion; and (4) use of confusingly similar mark in web site metatags is actionable under Lanham Act.
Reversed and remanded. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 C.A.9 (Cal.),1999

which happens to be about Netbula's lawsuit, rather than the "subterfuge and trickery" employed by Distinct, to lure people to its own website when they are looking for Netbula.

Netbula also claims that its reporting about the lawsuit is privileged, and falls within the litigation privilege. Netbula claims that California Civil Code section 47 expressly exempts the allegations of lawsuits, threatened legal action and comments on them from tort liability, with the exception of eventual claims for malicious prosecution. *See Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). Netbula cites an example in a lawsuit against Skippy, Inc., where the Fourth Circuit upheld denial of an injunction against its adversary for telling her side of the story on her web pages. *CPC Int'l. Inc. v Skippy Inc.*, 214 F.3d 456 (4th Cir. 2000). (*See also* Skippy-scam.com).

Netbula contends that the proposed counterclaims do not arise from "a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Netbula invokes the First Amendment as protection for the article about this lawsuit. Netbula claims that the website statement is a "non-actionable statement of opinion" under both federal and state law. Consequently, any counterclaim by Distinct based on this statement would be futile and the court should deny leave to amend to add it. Netbula relies on the Ninth Circuit decision in the case of *Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999). In that case the plaintiff, an escrow agent, sued a title insurance company for tortious interference with contract and false advertising under the Lanham Act based upon several alleged misrepresentations made by the title insurance company about the escrow agent. One such alleged misrepresentation was a statement by defendant that the plaintiff was acting illegally in providing its services because the escrow agent was not licensed in California. *Id.* At 729-30. The parties disputed whether California Financial Code section 17200 required the escrow agent to be licensed in California. The jury found for plaintiff and awarded damages. The Ninth Circuit reversed. The court held: "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion

statements and not statements of fact." *Id.* At 731, *citing Dial A Car, Inc. v. Transportation Inc.*, 82 F.3de 484, 489 (D.C. Cir. 1996).

Similarly, in the case at bar, Netbula claims that it is merely stating its opinion that Distinct has violated the law, and this statement of opinion cannot be disproved by Distinct until this court has reached its final verdict. Therefore, says Netbula, the mere fact that a search for Distinct leads search engines to Netbula's article about its lawsuit against Distinct, does not amount to a viable cause of action. Netbula claims that its opinions regarding the outcome of future legal proceedings against Distinct cannot be a basis for liability under California law. Thus, whatever Netbula predicts about its suit against Distinct cannot be used by Distinct as the basis of a counterclaim. Therefore, this court should not grant leave for Distinct to amend to add it as a counterclaim.

Netbula believes the same holds true for Distinct's claim for intentional interference with prospective economic advantage - such a claim requires false statements of fact. *Computer XPress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1014 (2001).

Finally, Netbula believes that if the court permits Distinct to amend its counterclaims, the scope of the litigation would be radically changed. New issues of First Amendment and libel would be injected into the case, which would require extensive additional discovery into, and factual and legal analyses of, the parties' respective beliefs, the public's perceptions, and the parties' prior correspondence. For example, Netbula could contend that it had been misquoted, or that search engines malfunctioned, or that any statements by Netbula were not made in United States commerce.

DISTINCT'S POSITION

Distinct directs this court's attention to a recent ruling by Judge Claudia Wilken in the case of *J.K. Harris & Co., LLC v Kassel, et al.*, 2002 U.S.Dist LEXIS 7862 (March 22, 2002). Judge Wilken granted an injunction. In that case, the plaintiff, an accounting firm which specialized in negotiating with the IRS to work out payment terms for taxpayers, moved pursuant to 15 U.S.C. section 1125 for an injunction against the defendant, a competitor who

allegedly published on its website unfavorable information about plaintiff. *Id.* Plaintiff also alleged that defendant had constructed its website, "taxes.com," so that web surfers seeking plaintiff's website would be diverted to defendant's website where they would read the unfavorable account of plaintiff's dealings with defendant. *Id.* Plaintiff in that case alleged that defendant employed a "strategic combination of computer programming techniques," including excessive use of plaintiff's trade name, the use of "header tags" and "underline tags" around sentences containing plaintiff's trade name, and the use of larger fonts and strategic placement of sentences containing plaintiff's trade name on defendant's website. *Id.* At *9-10. Searchers looking for information about plaintiff would be led to defendant's website which provided a link that stated "Complaints about JK Harris Pile Up." *Id.* At *10.

To determine whether defendant's use of plaintiffs' trademark and trade name is nominative and does not constitute trademark infringement, Judge Wilken applied the three-part test articulated by the Ninth Circuit in *New Kids on the Block v. News Am. Publ'g, Inc.* 971 F2d 302 (9th Cir. 1992):

> where the defendant uses a trademark to describe the plaintiff's product, rather than its own, we hold that a commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* At 308.

Judge Wilken granted the injunction despite concerns that the second prong might not be satisfied, finding that "[s]ome of the computer programming techniques that Defendants are alleged to be using may not satisfy this requirement." *JK Harris* at *16; *See also Playboy Enters., Inc. (PEI) v. Welles*, 279 F.3d 796, 804 n. 30 (9th Cir. 2002) (finding that the nominative use doctrine protected Welles' use of the PEI trademark, but that this finding was fact specific and that the "decision might differ if the metatags listed the trademarked term so repeatedly that Welles' site would regularly appear above PEI's in searches for one of the trademarked terms.").

Judge Wilken in the *JK Harris* case concluded that "Plaintiff's evidence that

Defendants' website was designed in a manner to induce customer confusion is sufficient to show a likelihood of success on its initial interest confusion claim." *JK Harris* at \*18. Judge Wilken issued a preliminary injunction enjoining defendants from "using more of Plaintiff's trade name than is reasonably necessary to identify that it is Plaintiff's services being described, including using " J.K. Harris" or any permutation thereof as a keyword for the taxes.com website more often than is necessary to identify the content of the website; using 'header Tags' and 'underline Tags' around sentences including Plaintiff's trade name on Defendants' website (www.taxes.com), and increasing the prominence and font size of sentences which include Plaintiff's trade name." *Id.* At \*30-31.

      Distinct claims that in the case at bar, Netbula has employed techniques similar to those used by the defendants in the *JK Harris* case. These include, but are not limited to: the building of a substantial number of pages around a theme, insertion of keywords in the titlebar of the browser, insertion of keywords in the title of the web page, the use of H1 tags to bold the title with keywords, insertion of keywords in the first paragraph of the body text, and insertion of keywords in the text of the link. Distinct also finds it significant that Netbula has placed a reference to the lawsuit posting on each of its product pages and a link directly to the product page from the posting.

      Distinct objects to this, since one of its prospective customers who types in the words Distinct and RPC receives a reference to a posting which contains what Distinct contends is false and misleading information regarding this lawsuit, often accompanied by a reference to Netbula's competing products. The posting regarding the lawsuit also provides links to lure the prospective Distinct customer directly to Netbula's website describing its competing products.

      Distinct rejects Netbula's claim that its postings are protected by the First Amendment; the First Amendment does not protect false and misleading information. *See U-Haul Int'l., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986). A party who is likely to be damaged in its business by a false or misleading statement has a right to seek an order enjoining such statements. *JK Harris* at \*21 (citations omitted). Judge Wilken ordered defendants to remove third party statements which plaintiff claimed in verified declarations to be untrue. *Id.* at \*27.

      Distinct also rejects Netbula's claim that its counterclaims would "radically change the

scope of the litigation," resulting in undue prejudice to Netbula. In fact, claims Distinct, its proposed counterclaim is very similar, both legally and factually, to Netbula's complaint, and would not involve adding new parties.

Distinct's counterclaims involve issues of the wrongful use of its trademark and trade names in the meta field of a website to manipulate search engine results. Distinct brings virtually the same causes of action as Netbula: trademark infringement, unfair competition, trade name infringement, false advertising on the Internet and intentional interference with prospective economic advantage under federal, state and common law. Because the proposed new claims mirror claims in the lawsuit as originally filed by Netbula, Distinct asks the court to grant leave to amend.

## ANALYSIS AND CONCLUSION

Under FRCP 15(a), leave to amend "shall be freely given when justice so requires." A claim is considered futile and leave to amend to add it shall not be given if there is no set of facts which can be proved under the amendment which would constitute a valid claim or defense. *See Miller v Tykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988) Denial of leave to amend on this ground is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed. *See Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial* at 8:422 (The Rutter Group, 2002).

Netbula focuses on the posting about the lawsuit, claiming privilege under Cal Civ. Code section 47 and the First Amendment. Netbula asserts that opinions about legal proceedings are opinions and not facts and therefore not grounds for tort liability. The problem is that Distinct is also alleging that Netbula is using the same tricks Netbula alleges against Distinct – using the trademarks and trade names of a competitor to lure prospective customers to its own site and its own products.

At least one author of a recent law review article is of the opinion that all Internet use of trademarks and trade names should be considered fair use, and not subject to claims of infringement:


> Keyword banner advertising is a form of targeted online marketing practice whereby a banner ad is displayed on a search engine results page. The banner ad is triggered by the keyword used in the search. Many search engines sell trademarks as keywords as well, allowing competitors to purchase them as keywords for the purpose of displaying their own advertising. Some have argued that this practice should lead to liability for trademark infringement or dilution. Given the realities of online marketing and the underlying policies of trademark law, this is unlikely. Rather, this practice should be regarded as trademark fair use and treated as a form of lawful comparative advertising.

Saunders, Kurt M., *CONFUSION IS THE KEY: A TRADEMARK LAW ANALYSIS OF KEYWORD BANNER ADVERTISING*, 71 Fordham L. Rev. 543, *543 (November 2002)

Distinct's counterclaim for initial interest confusion mirrors the first claim in Netbula's own complaint. Netbula's concerns about issues of the First Amendment, libel and so forth would apply only in a limited way to its article about this lawsuit. Therefore, Netbula cannot argue that permitting Distinct to add counterclaims is futile or would change the scope of the litigation to the prejudice of Netbula.

Distinct's motion for leave to amend to add the following counterclaims is granted:

1) that Netbula has posted false and misleading information on its website and

2) that Netbula has engaged in unfair competition by creating initial interest confusion through excessive use of the Distinct trademark and trade name on the Netbula website.

IT IS SO ORDERED.

DATED: January 15, 2003

_____
James Larson
United States Magistrate Judge